1  DONALD AMAMGBO
   AMAMGBO & ASSOCIATES
2  7901 OAKPORT, SUITE 4900
   OAKLAND, CA 94621
3  TELEPHONE: 510 615 6000
4  FACSIMILE: 510 615 6025

5  REGINALD TERRELL
   THE TERRELL LAW GROUP
6  223 25TH STREET
   RICHMOND 94804
7  TELEPHONE: 510 237 9700
8  FACSIMILE: 510 237 4616

9  Attorneys for Plaintiff Blackwell



UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA BLACKWELL., on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE HERSHEY COMPANY; HERSHEY CANADA INC.; MARS, INC.; MASTERFOODS USA; MARS CANADA INC.; NESTLE S.A.; NESTLE USA; NESTLE CANADA INC.; and ITWAL LTS.,<br><br>Defendants | No.<br><br>**C08-00674**<br><br>COMPLAINT FOR DAMAGES<br><br>CIVIL - CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Lisa Blackwell ("Plaintiff Blackwell"), on behalf of herself and all others similarly situated, brings this action under the federal antitrust laws, Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1 ("Sherman Act") and Section 4 of the Clayton Antitrust Act of 1914, 15 U.S.C. § ("Clayton Act"), against the above-captioned defendants. Plaintiff Blackwell makes the following allegations on information and belief, except as to those

-1-

COMPLAINT FOR DAMAGES

paragraphs that pertain to Plaintiff Blackwell, which are based upon personal knowledge. Plaintiff Blackwell's information and belief are based on, among other things, the investigation made her attorneys.

## 1. NATURE OF THE CLAIM

1. This complaint arises from an international cartel among the world's leading manufacturers of chocolate to fix, raise, maintain and or stabilize prices of chocolate in the worldwide chocolate market, including the United States.

2. Chocolate is a confectionery product created by processing cocoa beans and mixing the processed beans with sugar and other ingredients. As used herein, "chocolate" includes, but is not limited to, chocolate bars, bars of chocolate, industrial chocolate which is melted and powdered chocolate made after processing cocoa beans sold to create a final product, block chocolate that is solid chocolate blocks made for immediate consumption and for melting down to make desserts and molded chocolate products.

3. The worldwide market for chocolate is highly concentrated, with defendants together controlling approximately half of the market.

4. Defendants' market power in the United States is even greater. Defendants Hershey, Mars and Nestle control over 80 percent of the United States chocolate market.

## II. JURISDICTION AND VENUE

5. This action arises under Section 1 of the Sherman Act and Section 4 of the Clayton Act.

6. Jurisdiction of this court is founded on Section 15 of the Sherman Act, 15 U.S.C. § 15, for violations of Section of the Sherman Act, U.S.C. § 1and Section 4 of the Clayton Act, 15 U.S.C. § 15and 28 U.S.C. §§ 1331, 1337.

7. Venue as to defendants is proper in the Northern District of California, pursuant to Sections 15(a) and 22 of the Sherman Act and 28 U.S.C. § 1391(b), (c), because all defendants are found and transact business in this district. Defendants regularly and continuously conduct business in interstate and foreign commerce between and among the several United States and foreign countries. The interstate trade and commerce described herein has been carried out, in

COMPLAINT FOR DAMAGES

part, within the Northern District of California.

## THE PARTIES

**Plaintiff**

8.  Plaintiff Lisa Blackwell ("Plaintiff Blackwell"), purchased chocolate indirectly from one or more of the defendants during the relevant time period and was damaged because defendants' unlawful conduct as alleged herein.

**Defendants**

9.  The Hershey Company ("Hershey Co.") is a Delaware corporation headquartered at 100 Crystal A Drive, Hershey, Pennsylvania 17033.

10. Hershey Co. is the top-selling manufacturer of chocolate in the United States and accounts for 45 percent of the U.S. chocolate market. Hershey Co.'s revenues in 2006 were $4.9 billion, with $305.6 million net income and a profit margin of approximately 7.1%. Hershey Co. employs over 14,000 employees worldwide. During the class period, Hershey Co. indirectly and or through its subsidiaries and or affiliates, manufactured and sold chocolate to customers at anticompetitive prices which were inflated because defendants' unlawful conduct.

11. Hershey Canada, Inc. ("Hershey Canada") is a wholly-owned subsidiary of The Hershey Company, located at 2350 Matheson Blvd E, Mississauga ON, L4W 5E9. Hershey Canada manufactures, distributes and sells confectionery, snack, refreshment and grocery products in Canada, including the manufacture of chocolate bars, boxed chocolate, malted milk balls and other confectionery products. During the class period, Hershey's Canada indirectly and or through its subsidiaries and or affiliates, manufactured and sold chocolate to customers at anticompetitive prices which were inflated because defendants' unlawful conduct.

12. Defendants identified in Paragraphs 9-11 are collectively referred to herein as "Hershey," unless otherwise specified.

13. Mars, Incorporated ("Mars, Inc.") is a privately-held corporation entirely owned by the Mars family and headquartered at 6885 Elm Street, McLean, Virginia 22101. Mars, Inc. is a world-wide manufacturer of chocolate, amongst other products, which in 2006 had revenues of $21 billion. During the class period, Mars, Inc. indirectly and or through its subsidiaries and or

-3-

affiliates, manufactured and or sold chocolate to customers at anticompetitive prices which were inflated because defendants' unlawful conduct.

14. Masterfoods USS ("Masterfoods") is headquartered at 800 High Street, Hackettstown, New Jersey 07840. Masterfoods conducts Mars, Inc.'s U.S. food, snack and pet care operations. Masterfoods employs more than 7,000 employees in the U.S. and has fifteen manufacturing plants. During the class period, Masterfoods, indirectly or through its subsidiaries and or affiliates, manufactured and or sold chocolate to customers at anticompetitive prices which were inflated because defendants' unlawful conduct.

15. Mars Canada Inc., formerly Effem Inc. ("Mars Canada"), is a division of Mars, Incorporated. Headquartered at 27 Holland Dr, Bolton, ON L735S4, Mars Canada employs more than 700 associates at three sited, including three manufacturing facilities. During the class period, Mars Canada indirectly or through its subsidiaries and or affiliates, manufactured and sold chocolate to customers at anticompetitive prices which were inflated because defendants' unlawful conduct.

16. Defendants identified in Paragraphs 13-15 (above) are collectively referred to herein as "Mars," unless otherwise specified.

17. Nestle S.A. is a Vevey-Switzerland based multinational packaged food company that manufactures confectionery products, including chocolate, amongst other products. Nestle S.A. is headquartered at Avenue Nestle 5, CH-1800, Vevey, Vaud, Switzerland. In 2006 Nestle S.A.'s revenue was approximately $87 billion and net income approximately $4.5 billion. Nestle S.A. employs over 300,000 employees. During the class period, Nestle S.A., indirectly or through its subsidiaries and or affiliates, manufactured and sold chocolate to customers at anticompetitive prices which were inflated because defendants' unlawful conduct.

18. Nestle USA is a Delaware corporation with its principal place of business at 800 North Brand Boulevard, Glendale, California 92103. Nestle USA had sales of $8.5 billion in 2006. Nestle USA employs over 15,500 employees nationwide and has 20 manufacturing facilities, five distribution center sand twelve sales offices across the United States. During the class period, Nestle USA indirectly or through its subsidiaries and or affiliates, manufactured and

1  sold chocolate to customers at anticompetitive prices which were inflated because defendants'
2  unlawful conduct.
3      19.    Nestle Canada Inc., is a principal subsidiary of Nestle, S.A., is headquartered at 25
4  Sheppard Avenue West, North York, Ontario, M2N 6S8, Canada. Nestle Canada Inc.,
5  manufactures chocolate and other cocoa products, amongst other products. During the class
6  period, Nestle Canada, Inc. indirectly or through its subsidiaries and or affiliates, manufactured
7  and sold chocolate to customers at anticompetitive prices which were inflated because
8  defendants' unlawful conduct.
9      20.    Defendants identified in Paragraphs 17-19 (above) are collectively referred to
10 herein as "Nestle".
11     21.    ITWAL Ltd. ("ITWAL"), headquartered at 440 Railside Drive, Brampton, Ontario
12 L71 1L1 Canada, is a national network of independent, diversified retail and foodservice
13 wholesale distributors. During the class period, ITWAL was aware of, coordinated and
14 facilitated the unlawful conspiracy alleged here.

### IV.    UNNAMED CO-CONSPIRATORS

16     22.    On information and belief, other chocolate manufacturers, presently identified
17 herein as John Does 1-10, are co-conspirators with defendants in their unlawful restraint of trade.
18 These other co-conspirators have facilitated, adhered to, participated in and or communicated
19 with others regarding the conspiracy. These other co-conspirators have either acted willingly or,
20 due to coercion, unwilling, in furtherance of the unlawful restraint of trade alleged herein.

### V.    CLASS ACTION ALLEGATIONS

22     23.    Plaintiff Blackwell brings this action as a class action pursuant to Rules 23(a), (b)
23 (2) and 23(b) (3) of the Federal Rules of Civil Procedure, on behalf of herself and all others
24 similarly situated.
25     24.    The class is defines as: All persons or entities who purchased chocolate indirectly
26 from the defendants or their co-conspirators (the "class"), at any time from at least January 1,
27 2002 through the present (the "class period"), the exact date being unknown. Excluded from the
28 class are defendants, any subsidiaries or affiliates of defendants and any of the defendants' co-

conspirators, whether or not names as a defendant in this Complaint.

25. The class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and or the commerce involved, Plaintiff Blackwell believes the members of the class are geographically dispersed throughout the world, including throughout the United States and joinder of all class members would be impracticable. While the exact number of class members is unknown to Plaintiff Blackwell at this time, Plaintiff Blackwell believes there are not less than thousands of class members and their identities can be learned from defendants' and their co-conspirators' books and records.

26. Plaintiff Blackwell's claims are typical of the claims of the class members. Plaintiff Blackwell and the class members purchased chocolate at artificially maintained, non-competitive prices established by the actions of defendants and their unnamed co-conspirators in connection with the restraint of trade alleged herein. Plaintiff Blackwell and the class members have all sustained damages in that they paid inflated prices for the chocolate products at issue due to defendants' conduct in violation of federal law as complained of herein.

27. Plaintiff Blackwell will fairly and adequately protect the interests of the members of the class and has retained counsel competent and experienced in class action and antitrust litigation.

28. Common questions of law and fact exist as to each class member which predominates over any questions affecting solely individual members of the class. Among the questions of law and fact common to the class are:

    a. Whether defendants conspired, contracted or combined with others, for the purpose of and with the effect of raising, fixing, maintaining, pegging and or stabilizing the price of chocolate which was purchased by Plaintiff Blackwell and the class members;

    b. Whether defendants undertook actions to conceal the unlawful conspiracies, contracts and or combination described herein; and

    c. Whether defendants' conduct violated the relevant federal antitrust laws and caused injury to the business and property of Plaintiff Blackwell and the class members and, if so, the proper measure of damages.

COMPLAINT FOR DAMAGES

29. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy, particularly since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the class would impose heavy burdens upon the courts and defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the class. In contrast, a class action, such as that proposed herein would achieve substantial economies of time, effort and expense and would assure uniformity of decision as to the persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

30. The interest of the individual class members individually controlling the prosecution of separate actions is theoretical rather than practical. The class has a high degree of cohesion and prosecuting the action through representatives would be unobjectionable. The amounts at stack for class members, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against defendants. Plaintiff Blackwell does not anticipate any difficulty in the management of this action as a class action.

## VI. INTERSTATE TRADE AND COMMERCE

31. Throughout the class period, there has been a continuous and uninterrupted flow of transactions in and shipments of chocolate in interstate and international commerce throughout the United States and in the world.

32. The unlawful activities of defendants and the unnamed co-conspirators have been within the flow offend have had an indirect, substantial and reasonably foreseeable effect on interstate and international commerce.

## VII. FACTUAL ALLEGATIONS

33. Beginning on or about January 1, 2002, the exact date being unknown, defendants conspired, contracted and or combined amongst themselves and with others for the purpose of and with the effect of raising, fixing, pegging, maintaining and or stabilizing the price of chocolate and other commercial conditions for deliveries of chocolate purchased by Plaintiff Blackwell and other members of the class.

COMPLAINT FOR DAMAGES

34. The chocolate industry in the United States and worldwide is highly concentrated so as to facilitate the coordination of prices of chocolate.

35. Defendants collectively are the principal manufactures of chocolate domestically and worldwide.

36. According to published sources, three defendant manufacturers represent over 80 percent of the U.S. chocolate market. Defendant Hershey's market share is estimated at 45 percent, defendant Mars's share in estimated at 27 percent and defendant Nestlé's market share is estimated at nine percent.

37. Defendants also control almost half of the global chocolate market - with Mars having an approximately fifteen percent market share, Nestle having an almost thirteen percent market share and Hershey having approximately an eight percent share of the global chocolate market.

38. According to Packaged Facts - an industry publication - the United States market for chocolate rose to a record to a record-setting $16 billion in 2006. Much of that 2006 increase was achieved through price increases, rather than increased unit sales. Defendants, as the dominant players in the U.S. chocolate market, instituted uniform price increases.

39. For example, in late March of this year, Masterfoods increased wholesale prices of well-known chocolate bars, such as Snickers, by approximately five percent, citing rising costs as the basis for that price increase.

40. Shortly thereafter, Hershey's increased its prices by the same amount, also citing the need to offset costs.

41. Contrary to the expected decline that would normally follow a price increase under competitive conditions, Hershey's announced that it expected the price to increase to have a "minimal financial impact." Prudential analyst John M. McMillin agreed with that forecast, explaining that Cadbury and Masterfoods also increased prices, "so Hershey is not out there alone, we think, in this chocolate [price increase]."

42. This and other price increases by defendants during the class period were made pursuant to the unlawful price fixing conspiracy alleged herein.

43. Aside from the unlawful conspiratorial meetings hereinafter specifically alleged, defendants also had additional opportunities to conspire. Defendants are members of the Chocolate Manufacturers Association ("CMA") and the National Confectioners Association ("NCA") - each of which sponsored meetings that defendants attended during the class period.

44. The CMA, headquartered in Vienna, Virginia, is recognized as the premier trade group for manufactures and distributors of cocoa and chocolate products in the United States. CMA members produce over 90% of the chocolate processed in the United States.

45. The NCA is a trade association that represents the entire confection industry. It is one of the oldest trade associations in the world.

46. In July 2007, Canada's Competition Bureau ("the Bureau") initiated an investigation into the chocolate market, based on information provided by a "cooperating company" involved in the conspiracy.

47. On November 21, 2007, Ontario's Superior court issued search warrants to the Bureau to investigate a scheme to fix the prices of chocolate among Hershey's, Mars, Nestle and others.

48. It is reported that the Bureau investigation includes over 30 investigators.

49. The search warrants require defendants to surrender thousands of documents and computer files that pertain to their chocolate pricing arrangements.

50. Nestle, Hershey' sand other chocolate manufactures have each publicly disclosed that the Bureau has contacted them in connections with an investigation of unlawful conduct.

51. According to John Pecman, the Bureau's assistant deputy commissioner in the criminal division, the Bureau "can confirm that [it is] investigating alleged anticompetitive practices in the chocolate confectionery industry," and that "the volume of commerce affected is definitely potentially in the billions of dollars per year."

52. According to affidavits submitted to obtain search warrants in Canada, senior executives at Hershey's, Mars and Nestle met secretly in coffee shops, restaurants and at industry conventions to set prices. Specifically, certain of these meetings took place at the Auberge de Pommier restaurant in July 2007 and at food conventions in Vancouver and Niagara-on-the-Lake,

1  Ontario in 2007.

2  53. According to affidavits, the conspiracy involved the highest ranking executives within each defendant company. Rober Leonidas, Nestlé's Chief Executive Officer, is alleged to have told a competitor, "I want you to hear it from the top - I take my pricing very seriously." When one participant balked at the discussions, Eric Lent, Hershey Canada's general manager allegedly replied: "Don't worry, we can talk about it. Bon [Leonidas] and I talk all the time."

54. At one point during the conspiracy, a Nestle executive is alleged to have handed envelopes stuffed with pricing information to a competitor, with an instruction that the competitor avoid being seen picking up the information at Nestlé's offices.

55. The affidavits also indicated that ITWAL worked with the chocolate companies to force retailers to stop cutting prices for chocolate bars. Defendants threatened to cut off supply of chocolate to retailers that did not comply with its established pricing requirements. ITWAL's president also allegedly sent regular updates to participants of the conspiracy.

56. In one memorandum to the chocolate manufacturer defendants entitled, "TAKE ACTION NOW," ITWAL explained that "[a]t the 'end of the day,' it is only the suppliers' control and discipline of the [discounting] that can restore the functionality of the marketplace."

57. The Antitrust Division of the United States Department of Justice ("DOJ") has now begun its own inquiry into defendants' unlawful pricing practices in the United States chocolate market.

58. On December 20, 2007, Alice Nathanson, a Mar's spokeswoman, reported that Mars had been contacted by the DOJ about the company's alleged anticompetitive pricing practices in the U.S. chocolate and confectionery industry.

59. That same day, a Nestle spokeswoman, Laurie MacDonald, also acknowledged the DOJ's antitrust investigation of Nestlé's pricing practices.

### VIII. ALLEGATIONS OF ANTITRUST INJURY TO PLAINTIFF AND THE OTHER MEMBERS OF THE CLASS

60. The combination and conspiracy alleged herein had and continues to have the following effects, among others:

a.    Prices charged to Plaintiff and the class members for chocolate have been fixed or stabilized at higher, artificially derived, non-competitive levels;

b.    Plaintiff and the class members have been deprived of the benefits of free, open and unrestricted competition in the market for chocolate and

c.    Competition in establishing the prices paid in the United States and worldwide for chocolate has been unlawfully restrained, suppressed and eliminated.

61.    By reason of defendants' violations of Section 1 of the Sherman Act and Section 4 of the Clayton Act, Plaintiff and the class members have sustained injury to their business or property: The injuries sustained by Plaintiff and the class members are the payment of supra-competitive prices for chocolate as a result of defendants' illegal contract, combination and conspiracy to restrain trade as alleged. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent. The injuries sustained by Plaintiff and the class members are the payment of supra-competitive prices for chocolate as a result of defendants' illegal contract, combination and conspiracy to restrain trade as alleged. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## IX.    FRAUDULENT CONCEALMENT

62.    Defendants fraudulently concealed their participation in the conspiracy alleged herein by, among other things, engaging in secret meetings and communications in furtherance of the conspiracy and by holding themselves out as competitors to the public, to Plaintiff and to the other members of the class. Because of such fraudulent concealment and the fact that a price fixing conspiracy is inherently self-concealing, Plaintiff and the class members could not have discovered the existence of this conspiracy any earlier than its public disclosure.

## X.    CLAIM ALLEGED

### FIRST CAUSE OF ACTION

### VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT AND 4 OF THE CLAYTON ACT

63.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

64.    Defendants and the unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of

the Sherman Act and Section 4 of the Clayton Act.

65. The contract, combination, or conspiracy has resulted in an agreement, understanding, or concerted action between and among defendants and their co-conspirators in furtherance of which defendants fixed, maintained, or standardized prices for chocolate.

66. Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

67. Defendants' contract, combination, agreement, understanding, or concerted action with the co-conspirators occurred in or affected interstate and international commerce.

68. Defendants' unlawful conduct was through mutual understandings or agreements by, between and among defendants and the co-conspirators. These other co-conspirators have either acted willingly or, due to coercion, unwillingly, in furtherance of the unlawful restraint of trade alleged herein.

69. The contract, combination, or conspiracy has had - and continues to have - the following effects, among other:

    a. Prices charged to Plaintiff and the class members for chocolate have been fixed or stabilized at higher, artificially derived, non-competitive levels;
    b. Plaintiff and the class members have been deprived of the benefits of free, open and unrestricted competition in the market for chocolate; and
    c. Competition in establishing the prices paid in the United States and worldwide for chocolate has been unlawfully restrained, suppressed and eliminated.

70. As a result of defendants' unlawful conduct, Plaintiff and the class members have suffered injury in that they have paid supra-competitive prices for chocolate.

## XI. DEMAND FOR JURY TRIAL

Pursuant to Federal R. Civ. P. 38(a), Plaintiff Blackwell demands a jury trial as to all claims so triable.

## XII. REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff Blackwell respectfully requests the following relief:

    (a) That the court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure; that Plaintiff Blackwell be appointed as class representative and that Plaintiff Blackwell's counsel be appointed as counsel for the class;

(b) That the unlawful contract, combination and conspiracy alleged in the First Case of Action be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act and that such unlawful conduct be enjoined there under;

(c) That Plaintiff Blackwell and the class members recover compensatory damages, as provided by law, determined to have been sustained as to each of them and that judgment be entered against defendants on behalf of Plaintiff Blackwell and each and every member of the class;

(d) That Plaintiff Blackwell and the class members recover treble damages, as provided by law;

(e) That Plaintiff Blackwell and the class members recover their costs of the suit, including attorneys' fees, as provided by law; and

(f) For such relief as the court may deem just and proper.

Date: January 28, 2008                            Respectfully submitted,


By: _____
    DONALD AMAMGBO
    REGINALD TERRELL
    Attorneys for Plaintiff
    Lisa Blackwell

-13-

COMPLAINT FOR DAMAGES